MOLLIE TERRY SMITH ET AL. v. MILDRED N. CROSBY ET AL.

No. 29.

**1. Description—Levy and Sale of Land.**

A levy upon "all the right, title, and interest of the defendant, J. Mayrant Smith, in and to league number 6, Galveston County, originally granted to Samuel C. Bundick, and known as Virginia Point league," was followed by sale and sheriff's deed for same. *Held*, to pass the title to the purchaser to the land owned by said defendant in said league, although it was but an undivided interest in a part of the league allotted in partition to defendant Smith and another. The decree of partition was not recorded until after the sheriff sale....... 17

**2. All the Right, Title, and Interest.**

A levy and sale of the right, title, and interest of the defendant in execution operates as a conveyance of the land levied on, to the extent of the ownership of the defendant................................... 18

**3. Description—Sales Under Execution.**

The rule that in sales under execution and in like sales the land sold must be designated with reasonable certainty, is as fully recognized in this State as elsewhere......................................... 19

**4. Undesignated Part of Larger Tract—Sheriff Sale.**

It has been held that a sale by a sheriff of an undesignated part of a larger tract of land, there being no means of distinguishing the part sold from the residue, is void. In such cases no description of the land was given to which extrinsic evidence might be applied with safety for the purpose of locating it upon the ground. In such cases, to admit extrinsic evidence to show the unexpressed intention of the officer, would be to make that operative as a conveyance instead of the deed............. ........................................... 19

**5. Extrinsic Evidence to Identify Land Sold.**

That extrinsic evidence may be introduced to locate and identify land passing by a sheriff's deed containing an accurate but general description, is recognized by this court. The rule applies to sheriffs' sales, as to conveyances executed by the owner........................... 19

**6. Sufficient Description in Levy and Sheriff's Deed.**

The law does not require in such sales that the description must be such that the land may be identified by inspection of the levy and deed. If the description be general, but sufficiently accurate to enable

parties to identify the land levied upon and conveyed by the use of
such means as would be admissible in a court of justice for that pur-
pose. then the description should be deemed sufficient ............... 21

**7. Registration of Muniments of Title.**
The law contemplates that the owner of land will place evidence of
right on record, so that all persons dealing with it may know how the
title stands, and a failure to record may result in loss to the owner, if
the land pass into the hands of an innocent purchaser ............... 22

**8. Advertisement of Sheriffs' Sales.**
The purpose of advertisements of sheriffs' sales is not solely to give
notice of the time and place the sale will be made, but also to afford
persons desiring to purchase an opportunity to examine the title, and
to determine for themselves what land, or interest in land, they can
acquire by a purchase .............................................. 23

THIS case reached the Supreme Court on a certificate of dissent, certi-
fied by the Court of Civil Appeals for the First District, in an appeal
from Galveston County.

*Robert G. Street* filed an argument for appellants, citing:   Wofford v.
McKenna, 23 Texas, 36; Pfeiffer & Co. v. Lindsay, 66 Texas, 124;  Norris
v. Hunt, 51 Texas, 609; Donnebaum v. Tinsley, 54 Texas, 362; Wooters
v. Arledge, 54 Texas, 396; Waters v. Spofford, 58 Texas, 124;  Meuley
v. Zeigler, 23 Texas, 88; Rogers v. Bradford, 56 Texas, 630;  Jackson v.
Roosevelt, 13 Johns., 102; Jackson v. Delaney, 11 Johns., 373;  Jackson
v. Delaney, 13 Johns., 551; Simons v. Cotton, 2 Caine, 61;  Paine v.
Webster, 1 Vt., 101; Arms v. Bent, 1 Vt., 319; Brown v. Dickson, 2
Humph., 395; Waters v. Duvall, 6 Gill. & Johns., 76;  Gault v. Wood-
bridge, 4 McLean, 329; Blackw. on Tax Titles, 125;  Rev. Stats., arts.
177, 2288.

*Scott, Levy & Smith* also filed argument for appellants, citing:   Reddick
v. Williams, 5 S. W. Rep., 375; Sanger v. Trammell, 66 Texas, 361;
Pfeiffer v. Lindsay, 66 Texas, 124; Freem. on Ex., sec. 280.

*Willie, Campbell & Ballinger*, for appellees, in an argument, cited:
Wilson v. Smith, 50 Texas, 369; Kingston v. Pickins, 46 Texas, 99;
Giddings v. Day, .84 Texas, 605; Overand v. Menczer, 83 Texas, 123;
Thornton v. Murray, 50 Texas, 161; Hooper v. Hall, 30 Texas, 154;  Cox
v. Hart, 145 U. S., 387; Dodge v. Walley, 23 Cal., 225;  Swan v. Parker,
7 Yerg., 490; McLean v. Paul, 5 Iredell (Law), 22;  Rev. Stats., arts.
2316, 4340.

STAYTON, CHIEF JUSTICE.—The adverse parties claim through J.
Mayrant Smith, and if the sheriff's sale passed his interest in the Bun-

dick league, then appellant has no right, for she claims through a conveyance made by him since the sale by the sheriff was consummated.

The ancestor of J. Mayrant Smith, defendant in execution, owned an undivided interest in the Samuel C. Bundick league, which was partitioned through a decree of the District Court for Galveston County, prior to the levy and sale under execution through which appellees claim, but the decree partitioning the land was not recorded until long after the sheriff's sale.

By the partition decree a particular part of the league was set apart to J. Mayrant Smith and coheir, and under this state of facts it is contended that the levy, sale, and sheriff's deed did not pass to the purchaser his interest in the league.

The levy endorsed on the execution, in so far as it described the land, was as follows: "All the right, title, and interest of the defendant, J. Mayrant Smith, in and to league number 6, Galveston County, originally granted to Samuel C. Bundick, and known as Virginia Point league."

The advertisement under which the sale was made was not produced, but the description of the land contained in the sheriff's deed, under which appellees claim, was the same the levy endorsed.

It is not claimed that the description of the league was in any respect uncertain or inaccurate; but it is contended that the levy, sale, and deed, for want of more particular description of parts sold, did not pass title to the purchaser to any part of the league owned by defendant in execution.

In the absence of evidence to the contrary, it must be taken as true that the sheriff took the necessary steps required by law to make a valid sale, and did sell all he was authorized by the levy to sell.

It seems to be contended, that the words " all the right, title, and interest of the defendant" in and to the league of land described in the levy and sheriff's deed should not be given the same effect as would words declaring expressly that the land itself was levied upon, sold, and conveyed; but we can not concur in this.

The words, as descriptive of the estate and quantity of land levied upon, sold, and conveyed, must be given the same effect as would be given to them in a conveyance voluntarily executed by an owner or claimant of land.

Nearly three centuries ago it was said: " If a man be seized of land in fee simple or for life, or have an estate in it for years, by statute merchant, staple, elegit, or the like, and he grant all his estate, or all his right, or all his title, or all his interest of and in the land, by this grant all his estate and as much as he is able to grant, doth pass." Shep. Touch., 98; Elphinstone on Interpretation of Deeds, 205.

This is one of the fixed rules regulating conveyances.

When an owner of land, whatsoever his estate may be, conveys " all his right" therein, he passes to the person to whom the conveyance is made the same right he held, as fully as could he by words which in terms purported to convey the land. Conveyance of right in and to property necessarily transfers the property, in so far as owned by the person making the conveyance.

When the owner of land conveys " all his title" in and to it, he necessarily brings about the same result. When he conveys his " interest" in and to land, he transfers whatever ownership he has, measured by estate and area of interest.

For a long time past, from solicitude to use words that would embrace every conceivable interest in lands, it has been usual to convey " all the right, title, and interest in and to" land described in a deed; and when such words are used, without other words limiting their effect, they must be held to convey the land as fully as was it owned by the maker of the deed.

If he owned the entire tract described in the deed in fee simple, that passes to his vendee. If he owned a less estate in the entire tract, that passes. If he owned in fee simple or lesser estate only a part of the tract described, whatever he owned passes. If he owned an undivided interest in the whole tract described, or only in a part of it, that which he owned will pass.

The same rule applies to levies, sales, and conveyances made by sheriffs in obedience to executions, unless there be some rule of law making them exceptions.

In Brown v. Smith, 7 B. Munroe, 362, the rule was thus announced: " The objection made to the terms of the levy as being upon the right, title, and interest of Johnson in the land, and not upon the land itself, is untenable. The distinction is but nominal, and has been too frequently disregarded in making levies and sales for it now to be questioned whether a levy and sale in either mode is not sufficient, with the sheriff's deed, to pass to the purchaser such title as the defendant had subject to execution." The same ruling was made in Humphreys' Executor v. Wade, 84 Kentucky, 400.

In Woodward v. Sartwell, 129 Massachusetts, 214, attachment was levied on " all the right, title, and interest" of the defendant in a tract of land, and it was held to be valid.

The court said: " The land itself may be conveyed, or the right, title, and interest of the debtor in the same may be conveyed; and if the latter form of deed is used by the officer, such estate as the debtor had in the premises at the time of the attachment would pass. * * * The deed to the purchaser recites the attachment, the seizure, the notices, and the sale, and conveys ' the right, title, and interest which the said Wales L. Egerton had at the time when the same was attached as aforesaid in and

to the following described real estate.' We are of opinion that this was a sufficient deed to the premises. It was sufficient to describe what was to be sold—the right, title, and interest of W. L. Egerton on the day of the attachment; and the deed of the same conveyed that which was attached.''

In Vilas v. Reynolds, 6 Wisconsin, 229, the levy of an execution on land was upon the '' right and interest'' of the defendant, which was held to be sufficient.

The same ruling was made in Millett v. Blake, 81 Maine, 531; same case, 10 American State Reports, 275; Parks v. Watson, 29 Missouri, 108; Lewis v. Chapman, 59 Missouri, 381; McLaughlin v. Shields, 121 Pennsylvania State, 287; Swan v. Parker, 7 Yerger, 490.

The statute provides, '' When a sale has been made, and the terms thereof complied with, the officer shall execute and deliver to the purchaser a conveyance of all the right, title, interest, and claim which the defendant in execution had in and to the property sold.'' Rev. Stats., art. 2316.

The word ''claim'' does not add anything to the certainty or extent of a levy, or to a conveyance made in pursuance of a sale made under it.

The rule, that in sales under execution and in like sales, the land sold must be designated with reasonable certainty, is as fully recognized in this State as elsewhere; but there may be a seeming conflict in the decisions made in the different States as to what amounts to a sufficient designation.

It has been held that a sale by a sheriff of an undesignated part of a larger tract of land, there being no means of distinguishing the part sold from the residue, is void. Among the cases so holding are the following: Wofford v. McKinna, 23 Texas, 36; Norris v. Hunt, 51 Texas, 609; Wooters v. Arledge, 54 Texas, 395; Pfeiffer v. Lindsay, 66 Texas, 123.

In these and like cases no description of the land was given to which with safety might extrinsic evidence be applied for the purpose of locating it upon the ground.

In that class of cases extrinsic evidence could not be received, simply because there is no general yet accurate designation of the land given in the levy and deed by which extrinsic evidence must be controlled. In such cases, to admit extrinsic evidence to show the unexpressed intention of the officer, would be to make that operative as a conveyance instead of the deed.

In Wilson v. Smith, 50 Texas, 365, the levy and conveyance were on and of ''160 acres of land, being a part of the homestead tract of said James Bankston, exclusive of 200 acres exempt by law.'' The homestead tract embraced about 360 acres of land, but the exempt 200 acres had not been designated.

The levy and conveyance were held not to be void. '' It was not a sale of so many acres out of a larger tract, with no means of fixing or lo-

cating the land sold, then or afterwards; but was a sale of that part of the tract remaining after the homestead was laid off."

That extrinsic evidence may be introduced to clearly locate and identify land passing by a sheriff's deed containing an accurate but general description, ought not to be controverted, and is not an open question in this court. Wilson v. Smith, 50 Texas, 370; Giddings v. Day, 84 Texas, 608.

The rule in this respect is the same, whether the deed be one executed by a sheriff after a sale under execution, or one voluntarily executed by the owner of the land.

The sheriff's levy and deed are not ambiguous in the sense that there is uncertainty as to the meaning of the language used in describing the land levied upon and sold; for that can have but one meaning, which is, that the sheriff levied upon, sold, and conveyed to the purchaser every interest in the league of land described which the defendant in execution had at the time the levy was made.

There are a few decisions that seem to sustain the proposition that a levy, sale, and conveyance made by a sheriff under execution of the " interest " of the debtor in a tract of land described will not pass title to so much of the land as he owned.

These decisions seem to stand not so much upon the uncertainty of the land levied upon and conveyed, as upon a rule of public policy deemed necessary for the protection of the right of the debtor.

In Whatley v. Newsome, 10 Georgia, 74, the levy was on " all John Whatley's interest in lot of land, number not known, the place whereon said Whatley now lives." The deed conveyed " the interest of John Whatley in lot of land number 271, first district of said county " (Macon). There was no controversy as to the lot on which Whatley lived being lot number 271, as described in the conveyance; but it was contended that a levy, sale, and conveyance of Whatley's *interest*, without stating what that was, would not pass title.

In disposing of the case the court said: " Does the sheriff's deed sufficiently describe the land, so as to enable the purchaser to maintain ejectment for its recovery ? We think not. The *interest* only of Whatley in the lot was levied on and sold, and conveyed by the deed, without specifying what that interest was; whether a mere possession, a term, a fee, a succession, remainder, or any other estate, or whether in the whole or a part only of the land. Upon principle and policy, as well as authority, we are clear that this defect is fatal."

After stating that a debtor's *interest* might be sold under execution, the court said: " When the attempt is made to levy and sell that interest, should it not be described in such a way as that the creditor, debtor, and the public may all be notified what it is that is selling ?"

That decision was followed in another case, in which the levy was upon "a certain and all of the interest" of the defendant in execution in a lot described.   Williams v. Baynes, 84 Ga., 116.

The case of Jackson v. Rosevelt, 13 Johnson, 97, is cited as authority in the first of the decisions above noticed.   In that case, it appeared that a large tract of land extending over several counties was granted to some proprietors of what was known as the "Hardenburg Patent." This land was subdivided time and again between the proprietors and their descendants, when, after half a century from the time the grant was made, a certain lot vested in one of the heirs of one of the original proprietors, who died leaving five children, against two of whom a judgment was rendered. Execution issued under that judgment was levied, but the form of the levy does not appear.

In the sheriff's deed the land was described as "all the lands and tenements of Elizabeth Ellis and · Sarah Van Kleeck, heirs and devisees of Laurence Van Kleeck, situated, lying, and being in the patent commonly called and known by the name of the Hardenburg Patent."

Partition, before referred to, was confirmed by an act of the Legislature, had been filed in the office of the Secretary of State, and was shown to have been of great notoriety.   The sheriff's sale and conveyance were held inoperative for want of sufficient description of the land.

That was an extreme case; and in view of its facts it may be that each of the subdivisions, or, as they were termed, lots, should have been deemed separate tracts of land as fully as though each had passed from the government as a separate grant.

The case of Jackson v. De Lancy is referred to in support of the rule announced in Whatley v. Newsome, but it has no bearing on the question.   In that case the sheriff seized and sold two separate tracts of land, for each of which a certain sum was bid and paid, and these were conveyed to the purchaser; but the sheriff's deed went further, and undertook to convey "all other the lands, tenements, and hereditaments whereof the said William, Earl of Sterling, was seized within the county of Ulster."

Lands embraced within this general description were in controversy, and the court simply held that a sheriff could not pass title to land he had neither seized nor sold.   In the course of the opinion, however, it was said, "that the sheriff can not sell any land on execution but such as the creditor can enable him to describe with reasonable certainty;" and with this statement no fault can be found, for it does not undertake to determine what would be such reasonable certainty.

The law does not require that in such sales the description must be such that the land may be identified by inspection of the levy and deed; and if the description be general, but sufficiently accurate to enable parties to identify the land levied upon and conveyed, by the use of such means as

would be admissible in a court of justice for that purpose, then the description should be deemed sufficient.

In one of the cases referred to it is said, that the description must be such " as that the creditor, debtor, and the public may all be notified what it is that is selling." In another, that the officer must " so locate the lands as to afford means to the bystanders and bidders of informing themselves as to the value;" while in another it is said, that " the policy of the law requires not that there should exist the means of showing at some future time what is otherwise indefinite and uncertain, but that at the time of sale it should be within the power of all who are by the notice invited to become bidders to know what was offered, and that it should not be left to be surmised or guessed at some future time as to what the officer intended to sell." Hellick v. Morrill, 37 Minn., 254.

If the general description given be accurate, and such that, following and applying it, purchasers, by the use of that diligence and care usually exercised in examining title and ascertaining the value of land they contemplate purchasing, may ascertain what particular land or interest in it is offered for sale, can it be said that such persons have not present means of knowing what is offered for sale ?

Can it be said, when land or interest in it is so described, that bidders have not means of informing themselves of its value ?

When so described, can it be said that creditor, debtor, and the public are not notified of what is to be sold ?

If we decide this case upon the weight of authority, we must hold, that under the description of " right, title, and interest " in the league of land passed every interest held by the defendant in execution.

If we decide in accordance with reason, keeping in view the right of debtors to have their property fairly sold, of purchasers to know what they are buying, and also the right of creditors to subject the debtor's property to sale in payment of his debts, we are forced to the same conclusion.

The impropriety of requiring a creditor to so describe a tract of land or interest in it owned by the debtor, that its locality or the interest therein may be determined from that description alone, is well illustrated by the facts in this case.

The law contemplates that the owners of land will place evidence of right on record, so that all persons dealing with it may know how the title stands; and the failure to record may result in loss to the owner if the land passes into the hands of an innocent purchaser.

A person desiring to know what, if any, interest J. Mayrant Smith had in the league of land described in the levy and deed, would go to that record to ascertain his right, and that would inform him that the father of J. Mayrant Smith owned an undivided interest in the league, the extent of which might or might not be described by the record.

He would then ascertain whether the father was living, and finding

that he was dead, would then inquire who inherited his estate or took it by devise. If the property was disposed of by will, from that he might ascertain, most frequently, in what proportion two or more devisees took the testator's interest in the land, or whether it went only to one person.

If he ascertained that the father died intestate, an inquiry would have to be made as to the persons and number of persons who inherited his estate, and the interest each one was entitled to.

From this he would ascertain that J. Mayrant Smith had an undivided interest in the league; but if he be a creditor seeking to subject that interest to the payment of his debt, must he determine from his own inquiry what the interest of his debtor is, and at his peril direct the sheriff to levy on only a specified undivided interest in the league?

We think not; for the creditor ought not to be compelled to determine at his peril, in such a case, just what the undivided interest of the debtor is. If he conclude it to be an undivided fourth-interest, and it should be so levied upon and sold, and it should afterwards appear that the debtor owned an undivided half-interest, what would be the effect of the sale?

If such a sale would pass the interest sold, it might operate to the injury of both debtor and creditor, while a sale of the actual interest would have been beneficial to the latter.

The record would have shown, in connection with the inquiry as to the death of the father, that J. Mayrant Smith owned an undivided interest in the entire league, when in fact, by reason of the partition, he owned only an undivided interest in that part of the league given to the estate of the father in partition. The decree by which that partition was made was not recorded until after the levy and conveyance were made, although required by law to be recorded.

Under such state of facts, was the creditor under obligation to cause the levy and sale to be made only of the undivided interest in the part given to the estate of the father in partition? A rule that would require such a procedure would not further the ends of justice, but would encourage debtors to withhold from record their evidence of right, in order that neither a creditor nor a sheriff could make or cause to be made a valid levy and sale of real estate.

The debtor does not need to be informed what interest he has in a tract of land accurately described; he is presumed to know the extent of his rights and its character; and when all his right, title, and interest in a tract of land sufficiently described is levied upon, he must take notice that a sale under that levy will pass all the interest he has.

No prudent man, contemplating the purchase of land at sheriff's sale under execution, relies upon the levy or proposition of the sheriff to sell in determining what part or interest in a tract of land sufficiently described in a levy and offer to sell he will acquire right to under a purchase; nor can he claim that it is the duty of the creditor to exercise a

higher degree of care, for his benefit, in directing the levy than self-interest will induce the purchaser to exercise for his own protection.

The purpose of advertisement is not solely to give notice of the time and place the sale will be made, but is also to afford persons desiring to purchase an opportunity to examine title and to determine for themselves what land or interest in land they can acquire by a purchase. As to this they do and must rely upon their own judgments, based on such inquiry as they deem proper to make or to cause to be made.

" The policy of the law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor, so as to secure, if it can be done consistently with legal rules, the object they were intended to accomplish." White v. Loving, 93 U. S., 514, 523.

The certainty necessary in the levy, sale, and conveyance of land under execution is thus well stated: " There may not be certainty to every intent, nor is it necessary there should be in such a case; certainty to a general intent, such as would put the owner and purchasers upon inquiry, affording the means of complete information, is all that can be expected." Swan v. Parker, 7 Yerg., 493.

Decisions may be found in which it was held, that under a levy, sale, and conveyance such as that before us, title to lots in a town within the grant generally described would not pass; and this is in accordance with the statute in force in this State, which prescribes, that " if real property situated in any town or city, taken in execution, consist of several lots, tracts, or parcels, each shall be offered separately, unless the same be not susceptible of a separate sale by reason of the character of the improvements thereon." Rev. Stats., art. 2305.

The statute further gives a defendant the right, when lands not situated in a town or city are taken in execution, if he be the sole owner, to have them sold in lots upon conditions named in the statute. Rev. Stats., arts. 2306–2308.

Neither these decisions nor statutes can have any bearing favorable to the proposition made by appellants, to the effect that no valid sale could be made of the interest of the debtor in the league unless it was in terms a sale of the undivided interest in the part of the league set apart to his father's estate by the decree of partition made in pursuance of a levy on that interest in the particular tract.

The disposition made of this case by the Court of Civil Appeals was correct, and the judgment of that court, as well as of the District Court, will be affirmed.

*Affirmed.*

Delivered June 15, 1893.

Motion for rehearing refused.